**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 10-cv-00408-WJM-MJW

MAKE A DIFFERENCE FOUNDATION, INC., a Mississippi corporation,

      Plaintiff,

v.

CHRISTOPHER H. HOPKINS;
T. MURRAY WILSON;
RONALD BLAKELY;
PAUL CHING;
BRIAN MACNEILL;
RONALD PHILLIPS;
JOHN READ;
GORDON TALLMAN;
PAMELA WALLIN;
THOMAS MILNE; and
W. SCOTT THOMPSON,

      Defendants,

and

OILSANDS QUEST, INC., a Colorado corporation,

      Nominal Defendant.

---

**ORDER GRANTING FINAL APPROVAL OF DERIVATIVE LITIGATION
SETTLEMENT**

---

This matter is before the Court on Plaintiff's Motion for Final Approval of

Derivative Litigation Settlement (ECF No. 159), and Plaintiff's Motion in Support of

Application for Award of Attorneys' Fees and Expenses (ECF No. 160).  For the

foregoing reasons, the Court GRANTS the two Motions, issues final approval of the

Second Amended Stipulation and Agreement of Settlement and Release filed on

October 28, 2011 (ECF No. 147-1), and awards Plaintiff's counsel $250,000 in attorneys' fees and expenses.

## I.  BACKGROUND

Plaintiff filed this action on February 24, 2010 (ECF No. 1), and filed the operative Second Amended Verified Derivative Complaint ("Complaint") on September 20, 2010 (ECF No. 79).  In the Complaint, Plaintiff alleged, *inter alia*, that current and former directors of Oilsands Quest, Inc. ("Oilsands") breached their duty of loyalty and good faith and committed waste by approving transactions that directly benefitted certain Oilsands executives and directors, but harmed Oilsands and its shareholders.  (*Id.*)  On September 29, 2010, Defendants filed Motions to Dismiss the Complaint, moving to dismiss the Complaint on numerous grounds.  (ECF No. 84-86.)

The Court had not yet ruled on the Motions to Dismiss when Plaintiff, on August 11, 2011, filed a Stipulation and Agreement of Settlement and Release.  (ECF No. 131.)  Plaintiff subsequently filed an Amended Stipulation and Agreement of Settlement and Release, and also filed an Unopposed Motion for Order to Preliminarily Approve Derivative Litigation Settlement.  (ECF No. 138-140.)  The proposed settlement agreement would result in the enactment of corporate governance reforms – specifically a "Related Person Transaction Policy" – that would require approval of related party transactions by a special committee of the Oilsands Board of Directors.  (ECF No. 138-1.)

On October 6, 2011, the Court denied without prejudice the Unopposed Motion for Order to Preliminarily Approve Derivative Litigation Settlement, solely on the ground that the parties' proposed form and program of notice of the settlement to shareholders was

deficient. (ECF No. 146.)  On October 28, 2011, Plaintiff filed an Amended Motion for

Order Preliminary Approving Derivative Litigation Settlement, and a Second Amended

Stipulation and Agreement of Settlement and Release, which remedied the inadequacies

of the prior proposed form and program of notice to shareholders.  (ECF No. 146-147.)

As a result, the Court granted the Amended Motion for preliminary approval of the

settlement.  (ECF No. 148-149.)

      Plaintiff's counsel has filed a declaration under penalty of perjury that the Court-

approved form and program of notice was completed in full, including the mailing of

47,142 notices of the settlement to the then-current record holders and beneficial owners

of Oilsands common stock.  (ECF No. 161.)  Between mid-November 2011, when the

notices were mailed, and mid-February 2012, when the derivative litigation settlement

fairness hearing ("settlement hearing") took place, the Court received a total of three

written objections to the proposed settlement.  (ECF No. 150, 156, 157.)  The three

objections were all very cursory in nature, not providing an adequate basis to call into

question the propriety of the settlement.  At the settlement hearing held before the Court

on February 24, 2012, the Court expressly overruled the three objections.  (ECF No.

167.)  No objectors attended the settlement hearing.  (*See id.*)

      As indicated by Plaintiff's filings on January 4, 2012 (ECF No. 151) and February

28, 2012 (ECF No. 169), and confirmed by counsel at the settlement hearing, Oilsands

has recently sought protection under the Canadian bankruptcy laws.  The Court of

Queen's Bench of Alberta has explicitly lifted any stay in those proceedings to allow this

Court to act in approving or disapproving the proposed settlement of this action.  (*See*

ECF No. 169, at 5-6.)

On February 3, 2012, three weeks prior to the settlement hearing, Plaintiff filed its Motion for Final Approval of Derivative Litigation Settlement (ECF No. 159), and Motion in Support of Application for Award of Attorneys' Fees and Expenses (ECF No. 160).

## II.  ANALYSIS

### A.    Motion for Final Approval of Settlement

In considering the arguments raised in Plaintiff's Motion for Final Approval of Derivative Litigation Settlement, the arguments made by the parties at the settlement hearing, and the (few and inadequate) objections to the proposed settlement, the Court finds good cause to order final approval of the settlement in this action.

"Before approving the settlement of a shareholders' derivative action . . ., the district court must determine that there has been no fraud or collusion in arriving at the settlement agreement, and that it is fair, reasonable, and adequate."  *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *see also* 10 Federal Procedure, Lawyers Edition § 25:175 ("The general standard used to evaluate a settlement [in a derivative shareholder action] is that it must be fair, adequate, and reasonable, and not the result of fraud or collusion, and that it must be in the best interests of the parties.").

The Court finds that the settlement has been negotiated at arm's length and arrived at in good faith, there being no evidence of fraud or collusion between the parties.  *See Maher*, 714 F.2d at 456-57 (stating that a factor favoring approval of a derivative litigation settlement is that it "was the result of arm's-length negotiation, after extensive discovery and intelligent evaluation of the lawsuit by the parties and their capable counsel").  Indeed, with Defendants' Motions to Dismiss still pending at the time of the settlement, the Plaintiff's prospects for success in this action were certainly in

4

question.  *See id.* at 455 ("Settlements of shareholder derivative actions are particularly favored because such litigation is notoriously difficult and unpredictable.  The courts, therefore, do not lightly reject such settlements.").

The Court also finds that the terms of the settlement are fair, adequate, and reasonable.  The fact that the settlement involves only corporate governance reforms (in addition to payment of attorneys' fees) does not weigh against approval of the settlement.  To the contrary, the corporate governance reforms provided for as part of the settlement are specifically and appropriately designed to prevent the alleged director misconduct that formed the basis for this action.  *See id.* at 466 ("[A] settlement may fairly, reasonably, and adequately serve the best interest of a corporation, on whose behalf the derivative action is brought, even though no direct monetary benefits are paid by the defendants to the corporation."); *Zimmerman v. Bell*, 800 F.2d 386, 391 (4th Cir. 1986) ("Influencing the future conduct of management may serve the interests of the corporation as fully as a recovery for past misconduct, and a settlement may be accepted 'even though no direct monetary benefits are paid by the defendants to the corporation.'") (quoting *Maher*); *Sved v. Chadwick*, 783 F. Supp. 2d 851, 864 (N.D. Tex. 2009) (approving derivative litigation settlement because it "offers tangible, long-term remedial measures that are specifically designed to avoid the alleged missteps in [the company's] past and protect shareholders as the company moves forward").

Finally, the fact that only three conclusory written objections to the settlement were received and no objectors appeared at the settlement hearing, despite the fact that notice of the settlement was sent to more than 47,000 record holders of Oilsands stock, weighs heavily in favor of approval of the derivative litigation settlement.  *See Wal-Mart*

*Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("If only a small number

of objections are received, that fact can be viewed as indicative of the adequacy of the

settlement."); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86-87 (2d Cir. 2001) (where

27,883 notices were sent to class members, but only 72 class members requested

exclusion from the settlement and only 18 class members objected, court stated that

"this small number of objections weigh[s] in favor of the settlement"); *In re Rambus Inc.*

*Derivative Litig.*, No. C 06-3513, 2009 WL 166689, at *3 (N.D. Cal. 2009) ("The reaction

of the class to the proffered settlement . . . is perhaps the most significant factor to be

weighed in considering its adequacy . . . .") (quotation marks and brackets omitted); *In re*

*SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 530 (E.D. Pa. 1990) ("Both the

utter absence of objections and the nominal number of shareholders who have exercised

their right to opt out of this litigation militate strongly in favor of approval of the

settlement."); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372

(S.D. Ohio 1990) (giving the lack of meaningful objection "substantial weight in approving

the proposed settlement").

Based on these considerations, the Court finds good cause to order final approval

of the settlement entered into between the parties to this action.

**B.      Application for Award of Attorneys' Fees and Expenses**

The Court also finds good cause to award Plaintiff's counsel their requested

attorneys' fees and expenses in the amount of $250,000.

Attorneys' fees are properly calculated by determining the "lodestar" – the number

of hours reasonably expended multiplied by reasonably hourly rates – and then adjusting

the lodestar figure, if appropriate, by considering one or more of the factors in *Johnson v.*

*Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ("the *Johnson* factors").[1]

*See, e.g.*, *Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*, 616 F.3d 1098, 1102-04

(10th Cir. 2010); *Homeward Bound, Inc. v. Hissom Mem'l Ctr.*, 963 F.2d 1352, 1355-56

(10th Cir. 1992).

Plaintiff's counsel represents that the appropriate lodestar figure in this action is

$202,796.00, based on 410.95 hours of attorney time, multiplied by hourly billing rates of

$90 per hour for paralegal work and from $350 – $700 per hour for attorney work.  (ECF

No. 159-2.)  At the settlement hearing, Plaintiff's counsel also expressly represented to

the Court that the attorneys on the case exercised appropriate billing judgment in

determining that portion of actual time expended by Plaintiff's legal representatives for

which they would seek recompense from this Court.  Plaintiff's counsel represented that

the 410 hours listed was a conservative figure because every attorney excluded some

time from their final numbers, and also because the time spent at a law firm that had

been previously retained by Plaintiff was not included in the final figures at all.  The Court

finds that $202,796.00 is an appropriate assessment of the lodestar, reflecting the

reasonable number of hours worked on the case, and the reasonable billing rates (given

the complexity of the case and the unchallenged expertise of Plaintiff's counsel in

prosecuting shareholder derivative litigation).

---

[1] The *Johnson* factors are:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *See id.* at 717-19.

The Court also finds that Plaintiff incurred $42,483.25 in expenses, a reasonable figure.  Subtracting that $42,483.25 in expenses from the entire requested amount of $250,000 (*see* ECF No. 160, at 7 n.4) leaves a total request for attorneys' fees in the amount of $207,516.75.  Thus, Plaintiff's counsel is requesting that the Court apply a multiplier of approximately 1.02 (somewhat more precisely, 1.0232783) to the lodestar figure of $202,796.00, resulting in an attorneys' fees award of $207,516.75, and a total award of attorneys' fees and expenses in the amount of $250,000.[2]  The Court finds it appropriate to apply the very modest multiplier of approximately 1.02 to arrive at the total fee award of $207,516.75 and the total award of fees and expenses of $250,000.  *Cf. In re UnitedHealth Group Inc. S'holder Derivative Litig.*, 631 F. Supp. 2d 1151, 1160 (D. Minn. 2009) (applying 2.75 multiplier to lodestar figure in shareholder derivative suit in which plaintiffs' counsel worked on contingency in the face of considerable risk and uncertainty); *see also Miniscribe Corp. v. Harris Trust Co. of Cal.*, 309 F.3d 1234, 1245 (10th Cir. 2002) (affirming fee award based on a lodestar multiplier of 2.57 in class action); *Lucken Family Ltd. Partnership, LLLP v. Ultra Resources, Inc.*, No. 09-cv-01543, 2010 WL 5387559, at *3-*4 (D. Colo. Dec. 22, 2010) (applying 1.82 lodestar multiplier in class action); *Lucas v. Kmart Corp.*, No. 99-cv-01923, 2006 WL 2729260, at *9 (D. Colo. July 27, 2006) (applying 1.87 lodestar multiplier in class action).

---

[2] At the settlement hearing, Plaintiff's counsel represented that Oilsands has insurance coverage in the amount of $250,000, and thus Plaintiff's counsel has limited their request to $250,000 based on a 1.02 multiplier to the lodestar.  Counsel also explained at the settlement hearing that the insurer at issue is in the process of seeking to obtain a "comfort order" from the U.S. Bankruptcy Court for the Southern District of New York, a ministerial document that approves the insurer's payment of policy funds despite the existence of the Canadian bankruptcy proceedings.  (*See also* ECF No. 169, at 8-10.)

The scope and nature of the work required by Plaintiff's counsel during the two years this action has been pending, the complexity of the case, and the fact that Plaintiff's counsel was working on contingency basis all weigh in favor of a significant attorneys' fees award in this action. *See Johnson*, 488 F.2d at 717-19. Further, the Court finds the $250,000 award to be modest compared to awards in other, similar cases. *See id.*; *see also Srebnik v. Dean*, No. 05-cv-01086, 2007 WL 2422146, at *4 (D. Colo. Aug. 22, 2007); *In re UnitedHealth Group Inc. S'holder Derivative Litig.*, 631 F. Supp. 2d at 1158-60; *Cohn v. Nelson*, 375 F. Supp. 2d 844, 860-66 (E.D. Mo. 2005); *Strougo v. Bassini*, 258 F. Supp. 2d. 254, 263-64 (S.D.N.Y. 2003). The Court therefore concludes that $250,000 constitutes fair compensation to Plaintiff's counsel for their work in this case.

## III.  CONCLUSION

In accordance with the foregoing, the Court ORDERS as follows:

(1)     Plaintiff's Motion for Final Approval of Derivative Litigation Settlement (ECF No. 159) is GRANTED;

(2)     The Court hereby ISSUES final approval of the Second Amended Stipulation and Agreement of Settlement and Release entered into between the parties to this action (ECF No. 147-1);

(3)     Plaintiff's Motion in Support of Application for Award of Attorneys' Fees and Expenses (ECF No. 160) is GRANTED;

(4)     The Court hereby AWARDS the total sum of $250,000 in attorneys' fees and expenses to Plaintiff.

Dated this 19th day of March, 2012.

BY THE COURT:

_____
William J. Martínez
United States District Judge